UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY J. QUINN, Jr., | ) | Case No. 3:09CV546 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| OHIO DEPARTMENT OF | ) | **Report and Recommendation** |
| REHABILITATION AND | ) | **of Magistrate Judge** |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Jeremy Quinn ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Lucas County, Ohio Court of Common Pleas conviction for one count of kidnapping and six counts of rape. ECF Dkt. #1. On September 11, 2009, Respondent filed an answer.  ECF Dkt. #11.  On September 28, 2009, Petitioner filed a traverse.  ECF Dkt. #13.

The case was referred to the undersigned for a Report and Recommendation.  For the following reasons, the undersigned RECOMMENDS that the Court GRANT a CONDITIONAL WRIT on Ground One, REMAND the instant case for RESENTENCING, and DISMISS Grounds Two, Three, Four, and Five WITH PREJUDICE:

I.      SYNOPSIS OF THE FACTS

The Sixth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Sixth District Court of Appeals, the facts are:

{¶ 14} In this case, the victim testified that, on July 18, 2005, she came home around noon after spending the night at a friend's house. She took a shower and began to get ready for work around 3:00 p.m. She had to be to work at 4:30 p.m. and left her house between 4:10 p.m. and 4:15 p.m. She got into her 2000 Plymouth Neon, which was parked in her driveway, when she heard someone speak. She turned around and saw a black male, whom she did not know and had never met, coming into her car. The victim identified appellant as the person who entered her car. She testified that appellant came up to her car with a skinny silver knife, like a butterfly knife, and told her to get down. She screamed and appellant told her to stop or he would kill her. He put her head under the dashboard and put her legs up on the passenger's seat. The victim testified that appellant drove for three to five minutes, but she could not see anything from her position under the dashboard.

{¶ 15} When appellant stopped the vehicle, he told the victim to get in the back seat, where he joined her. After going through her purse, he told her to take off her clothes. She testified that appellant cut the strap of her shirt with his knife. She testified that appellant was wearing a black tee shirt and navy blue shorts. She also testified that he had scratches on his lower arm and a tattoo of a dog on his chest that said, "Fear or feel me." The victim stated that, while in the car, appellant made her put his penis in her mouth, and he put his penis in her vagina and anus. Appellant then made the victim exit the car, where he put his penis into her vagina two more times and again into her anus. Once outside the car, the victim could only see trees and a gray roof of a nearby building. Appellant then put the victim back into the car where he proceeded to masturbate. Appellant made the victim swallow his ejaculate.

{¶ 16} The victim also testified that appellant made her kiss him, that he sucked her breasts and licked her vaginal area. She put clothing back on, but had to wear pants from her trunk because she was unable to get her jeans back on due to her sweating. Appellant drove the victim, who was again under the dashboard, to a driveway around the corner from her house. He wiped down the steering wheel and the interior of the vehicle and left, after telling the victim "not to hate black people, because not all black people are the same, not all black people do this to people." The victim drove home. The victim was 16 years old in December 2005, at the time of the trial.

{¶ 17} When she arrived home, her neighbors Andrew and Karen Shilling were outside. Karen asked the victim if she had run into Andrew's car. The victim said that appellant had hit Andrew's car, that he raped her, and that he was probably watching her. Ms. Shilling took the victim into her garage and called 911. The victim described appellant to the 911 operator and police arrived on the scene. Before going to the hospital, while still at the Shilling's home, the victim testified that she was shown a photo array. She testified that she did not identify appellant immediately because his hair had been in corn rows when she saw him, but he was not pictured that way. Nevertheless, she identified appellant as the perpetrator. The victim did not recall seeing a photo array while she was at the hospital.

ECF Dkt. #11, Ex. 10; *State v. Quinn*, Case No. L-06-1003, 2008 WL 541110 at ¶¶ 14-17 (Ohio App. 6 Dist. Feb. 29, 2008), unreported.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court Conviction

-2-

On June 22, 2005, the Lucas County, Ohio prosecuting attorney filed an indictment charging Petitioner with: (Count One) Kidnapping, in violation of O.R.C. §2905.01(A)(4); and (Counts Two through Seven) Rape, in violation of O.R.C. § 2907(A)(2).  ECF Dkt. #11, Ex. 2. The case proceeded to a jury trial. ECF Dkt. #11, Ex. 4,5.  The jury found Petitioner guilty of all seven counts charged in the indictment.  *Id.*

On December 9, 2005, the trial judge issued a sentencing entry finding that Petitioner had committed the worst form of the offense.  ECF Dkt. #11, Ex. 6.  The trial judge also found Petitioner to be a sexual predator pursuant to O.R.C. §2950.01(E).  *Id.*  The judge ordered Petitioner to serve ten years for each count.  *Id.*  The judge ordered the sentences to run consecutively.  *Id.*  The trial court calculated Petitioner's aggregate sentence to be 70 years.  *Id.*

## B.     Direct Appeal

On January 6, 2006, Petitioner filed a notice of appeal from the Lucas County Court of Common Pleas conviction.  ECF Dkt. #11, Ex. 7.  On January 22, 2007, Petitioner filed a brief in support of his direct appeal, raising the following assignments of error:

1.   THE VERDICTS WERE UNSUPPORTED BY SUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2.   THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE AND CONTRARY TO LAW WHEN THE SENTENCE EXCEEDED THE MINIMUM TERM OF IMPRISONMENT ON THE BASIS OF FINDINGS MADE BY THE TRIAL JUDGE PURSUANT TO A FACIALLY UNCONSTITUTIONAL STATUTORY SENTENCING SCHEME.

3.   APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.

4.   PROSECUTORIAL MISCONDUCT DURING THE TRIAL RENDERED APPELLANT'S TRIAL FUNDAMENTALLY UNFAIR AND A NEW TRIAL SHOULD BE GRANTED.

ECF Dkt. #11, Ex. 8.  On July 16, 2007, the state filed a brief on the merits.  ECF Dkt. #11, Ex. 9. On February 29, 2008, the Sixth District Court of Appeals affirmed the trial court's judgment.  ECF Dkt. #11, Ex. 10.

On April 14, 2008, Petitioner filed a notice of appeal from the Sixth District Court of Appeals' judgment.  ECF Dkt. #11, Ex. 11.  Petitioner filed a memorandum in support of jurisdiction, raising the following propositions of law:

I.    The remedy that this court set forth in *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856 violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

II.   Trial courts do not have the authority to impose consecutive sentences.

III.  Trial courts deny defendants procedural due process of law by failing to provide reasons for imposing consecutive sentences. Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I, of the Ohio Constitution.

ECF Dkt. #11, Ex. 12.  On August 6, 2008, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #11, Ex. 13.

**C.    Application to Reopen**

On June 18, 2008, Petitioner filed an application to reopen his appeal in the Sixth District Court of Appeals, alleging ineffective assistance of appellate counsel.  ECF Dkt. #11, Ex. 14. Petitioner raised the following assignments of error:

1.    The prosecution in this case withheld and suppressed valuable exculpatory forensic evidence (seminal fluid) from the appellant at trial. Had the state not withheld the exculpatory evidence from the defendant upon request, the defendant would have had his own forensic experts test the D.N.A. Defendant never had forced sex or consensual sex with the alleged victim according to theory of defense. By the exculpatory evidence being withheld is a direct violation of discovery rules and the Fourteenth and Sixth Amendment to the U.S. Constitution and the Ohio Constitution Art. I, Section 10 and 16. This is unfair and a new trial should be granted.

2.    Appellant was deprived of effective assistance of trial counsel. When counsel failed to object to discovery violation of the U.S.C.A Constitutional Amendment 6 and 14 and denial of due process.

3.    It was prejudicial error to the appellant right for the trial court to refuse to apply a finding of "allied offenses" to the charges of one count of kidnapping and six counts of rape.

4.    The verdicts were unsupported by sufficient evidence and against the manifest weight of the evidence. Counsel did not raise a meritable argument concerning this error.

ECF Dkt. #11, Ex. 14.  On July 17, 2008, the appellate court denied Petitioner's application as untimely.  ECF Dkt. #11, Ex. 15.

**D.    28 U.S.C. § 2254 Petition**

On March 9, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison

-4-

authorities).  Petitioner raised the following grounds for relief:

**GROUND ONE:** Petitioner received a Unconstitutional sentence that violates the Ex-post facto and Due Process clause of the U.S. Constitution.

**Supporting Facts:** The Trial Court retroactively Applied a sentence Guideline that was not effective at the date petitioner was sentenced. Petitioner was sentenced on December 9th 2005, which the Ohio Guideline stated for the Petitioner to receive a Minimum or Concurrent sentence, but Trial Court stepped outside the Guideline on the date of Sentencing and Retroactively Applied a Sentence Guideline that came into effect (3) Three Months after Petitioner Date of Sentence, and gave Petitioner a Maximum and Consecutive Sentence. See State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio 856 and Blakely v. Washington 2004, 542 U.S.___ , 124 S.Ct. 2531.

**GROUND TWO:** Ineffective Assistance of Appellate Counsel

**Supporting Facts:** Petitioner was denied his right of effective Appellate Counsel by both counsels because both counsels failed to raise in Direct Appeal to the Court of Appeals and Ohio Supreme Court. That Petitioner was denied his Right to effective Assistance of Trial Counsel for not objecting to a retroactively applied Unconstitutional sentence. Even after the Court of Appeals stated that it turned down the error because it was not object to by Petitioner Trial Counsel.  Has the Unconstitutional sentence been objected to and Appellate counsel raised this ineffective claim by Trial counsel Petitioner Appeal would have been overturned the first Direct Appeal.  This is clearly seen by Appellate counsel failed to forsee or raise a meritable issue.

**GROUND THREE:** Ineffective Assistance of Appellate Counsel

**Supporting Facts:** Appellate counsels failed to raise that Petitioner was denied the right to effective assistance of trial counsel because trial counsel failed to object to the suppression of key exculpatory evidence. The Forensic scientist Ms. Linsey Windau clearly stated that she did not report seminal Fluid found inside victim vaginal area. This is clearly forseen but yet Appellate Counsels failed to raise this meritable error. Had the evidence been reported Petitioner would have had it tested to support his defense that he did not rape that alleged victim. This evidence is favorable to Petitioner and had this error been raised by Appellate counsel it would have change the outcome of the appeal.

**GROUND FOUR:** Ineffective Assistance of Appellate Counsel

-5-

**Supporting Facts:**     Petitioner's Appellant counsel failed to raise meritable argument when it raised "The verdicts were unsupported by sufficient evidence and against the Manifest weight of evidence." By not argueing that the state witness to the case perpetraited falsehood perjury and contradiction in statements with evidence.  Had this error been argued properly it would have shown the state witnes committed perjury to the courts destroying the witness credibility and that the Petitioner is legally Innocent of the alleged charges.

**GROUND FIVE:**     Ineffective Assistance of Appellate Counsel

**Supporting Facts:**     Petitioner Appellat Counselors failed to raise a clearly forseen meritable error on Appeal in the state court by not raise, "Prosecutoral Misconduct, for violating Discovery Rules and Brady" by withholding and suppressing vauleble Forensic evidence from Petitioner at Trial. The state's witness ms. Linsey Windau clearly spoke on that she had this evidence of semon found inside Ms. Redlin vigina but never reported it or told it had it in it's possession befor trial.  The Prosecution knew it had this evidence but failed to tell Defendant/Peitioner it had it.  To clearly contradict the alleged victim statement of claiming to be a virgin and to been raped by Petitioner.  This evidence should have been told and test especially according to Petitioner Theory of Defense.

ECF Dkt. #1.  On September 11, 2009, Respondent filed a return of writ.  ECF Dkt. #11.  On September 28, 2009, Petitioner filed a traverse.  ECF Dkt. #13.

## III.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not an issue in this case.  *See* ECF Dkt. #1, 11, 13.  Respondent does, however, contend that Petitioner has

procedurally defaulted Grounds Two, Three, Four, and Five.  ECF Dkt. #11 at 10-13.

**B.**     **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied  "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).    In *Harris v. Lafler*, this Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to

dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991). **C.      Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)      whether the petitioner failed to comply with an applicable state procedural rule;

(2)      whether the state courts actually enforced the state procedural sanction;

-8-

(3)　　whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)　　if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

As set forth in the last factor of the *Maupin* test, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D.Ohio, 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV.　STANDARD OF REVIEW

Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d). The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d)　　An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)　　resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

-9-

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.   Decisions of lower federal courts may not be considered.

B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.   The state court decision may be overturned only if:

1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

-10-

  3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

  4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

  Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

  (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore,

-11-

a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.   ANALYSIS

### A.   GROUND ONE

Petitioner first alleges that the trial court violated the Ex Post Facto and Due Process Clauses of the United States Constitution by retroactively applying a sentencing guideline that was not in effect at the time he was sentenced on December 9, 2005.  ECF Dkt. #1 at 6.  Respondent contends that Petitioner's Ex Post Facto claim is misplaced because Petitioner was never resentenced under *Foster*.  ECF Dkt. #11 at 14.  Respondent further contends that Petitioner has forfeited his *Blakely* by failing to object to his sentence in the trial court.  *Id.*

#### i.   Pertinent Law

Prior to Petitioner's initial sentencing, the U.S. Supreme Court decided *Apprendi* and held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 490.  Also prior to Petitioner's initial sentencing, the U.S. Supreme Court decided *Blakely v. Washington,* 124 S.Ct. 2531 (2004,. and held that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, and not the maximum sentence a judge may impose after finding additional facts.

At the time Petitioner was convicted, the Ohio Revised Code allowed for a sentence of three to ten years for felonies of the first degree (Counts One through Seven in this case).  O.R.C. §§ 2929.14(A)(1).  However, the Revised Code further provided that:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term

-12-

authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

(C) Except as provided in division (D)(7), (D)(8), (G), or (L) of this section, in section 2919.25 of the Revised Code, or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.

O.R.C. § 2929.14(B), (C) (West 2004). On February 27, 2006, the Supreme Court of Ohio consolidated four criminal cases in an opinion styled *State v. Foster* and held, *inter alia*, that R.C. § 2929.14(B) and (C) were unconstitutional because they "require[d] judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." *Foster*, 845 N.E.2d at 495.  The Supreme Court of Ohio went on to remedy the error by severing the unconstitutional mandatory judicial factfinding provisions:

> [R]eferences to mandatory judicial fact-finding properly may be eliminated in the four areas of concern. Without the mandatory judicial fact-finding, there is nothing to suggest a "presumptive term." To explain Ohio's "statutory maximum" for purposes of Apprendi and its progeny, the maximum prison term authorized by the jury verdict or the facts admitted by a defendant upon acceptance of a plea is the top of the sentencing range for the crime of which the defendant is convicted. For example, if the offender is convicted of a first-degree felony, the "statutory maximum" is ten years under R.C. 2929.14(A)(1).

*Id*. at 497.

## ii.    Procedural Default Analysis

Pro se habeas petitions are to be liberally construed with tolerance and forbearance.  *See Sellers v. Morris*, 840 F.2d 352, 354 (6th Cir. 1988).  While Petitioner alleges that the trial court violated the Ex Post Facto Clause and the Due Process Clause by retroactively applying *Foster*, it

is clear that he was never resentenced following *Foster*. *See* ECF Dkt. #11 at 14. Further, Petitioner contests the imposition of more than minimum, consecutive sentences in violation of *Blakely*. The trial judge did in fact impose a sentence following *Blakely* and engaged in statutorily-mandated judicial fact-finding, constituting a *Blakely* violation. *See* ECF Dkt. #11, Ex. 6; *see also infra* § V(A)(iii). The trial judge found that Petitioner had committed the worst form of the offense in order to enhance his sentence pursuant to O.R.C. §2929.14(C). *Id.* Since Petitioner was never resentenced under *Foster* and he challenges the imposition of more-than-minimum, consecutive sentences, the Court should liberally construe the instant petition as asserting a *Blakely* violation. Therefore, the issue is whether Petitioner is procedurally barred from asserting a *Blakely* claim.

Respondent contends that Petitioner forfeited his *Blakely* claim by failing to raise the claim at the time of sentencing. ECF Dkt. #11 at 16. Respondent relies on the following quote from the Ohio Court of Appeals' decision in Petitioner's case:

> [¶40] Appellant argues in his second assignment of error that, because the trial court engaged in judicial fact-finding in imposing a non-minimum, consecutive term of incarceration, his sentence must be vacated pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, and *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403. Appellant further argues that the remedy in Foster cannot be applied to persons who committed their crimes prior to the release of *Foster*, because such an application would violate principles of ex post facto and due process. As such, appellant asserts that his sentence should be vacated and that he should be remanded to the trial court for resentencing to a minimum, concurrent term of imprisonment.

> [¶41] Appellant's sentence to seven maximum, consecutive terms of incarceration is voidable pursuant to *Blakely* and *Foster*. *State v. Payne*, 114 Ohio St.3d 502, 2007 Ohio 4642, P 29, 873 N.E.2d 306. However, in Payne, the Supreme Court of Ohio held that "a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement of *Blakely*." 2006 Ohio 856, P 31. Where an appellant has forfeited his right to raise a *Foster/Blakely* issue on appeal, an appellate court is confined to a plain error analysis. *Id.*, P 24; *State v. Baccus*, 6th Dist. No. L-06-1310, 2007 Ohio 5991, P 13.

> [¶42] Although appellant's indictment, trial and sentencing occurred after *Blakely*, he failed to object to the constitutionality of his sentence in the trial court. Pursuant to Payne, we find that appellant forfeited the *Blakely* issue on appeal. We further find that no plain error occurred in this case because appellant cannot establish that but for the *Blakely* error, he would have received a more lenient sentence. *Payne*, P 25.

-14-

[¶43] As noted by the Ohio Supreme Court, if a defendant was to be resentenced pursuant to Foster, nothing would prohibit "the trial court from considering the same factors it previously had been required to consider and imposing the same sentence or even a more stringent one." *Id.*, P 26. In this case, the sentence imposed was within statutory parameters. The trial court considered factors, including, but not limited to, the seriousness of the crime, likelihood of recidivism, the circumstances of the crime, and appellant's criminal history. Upon review, we find that appellant failed to establish that he was prejudiced by the judicial fact-finding requirements, or that, but for the error, he would have received a more lenient sentence. Appellant's second assignment of error is therefore found not well-taken.

ECF Dkt. #11 at 16-17 quoting Ex. 10 at 15-16.  Respondent's assertion is misplaced.  The Court must determine if the state invoked an adequate procedural bar.  *Munson*, 384 F.3d at 314.  "To be adequate, a state procedural rule must be firmly established and regularly followed. . . ." *Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir. 2008) quoting *Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir.2002);*Chambers v. Million*, No. 99-6363, 2001 WL 873743, *3 (6th Cir. July 24, 2001), unreported, citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *Dugger v. Adams*, 489 U.S. 401, 418 (1989) citing *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964).  Moreover, a state procedural bar must be applied evenhandedly to all similar claims.  *Dugger*, 489 U.S. at 420-21; *Harris v. Reed*, 489 U.S. 255, 277-78 (1989).  This case presents a problem of uneven application of procedural bars to *Blakely/Foster* claims under the third prong of *Maupin*.

Although the appellate court in this case found that Petitioner forfeited his *Blakely* claim as a matter of state law,  this Court must consider whether the enforcement of that procedural bar was evenhanded.  The undersigned urges the Court to consider the Ohio law as it existed at the time Petitioner sought to raise the issue on direct appeal, because the Court "must consider whether the adequate and independent state procedural bar ... [was] 'firmly established and regularly followed' **by the time as of which it [was] to be applied.**"  *See Fautenberry* , 515 F.3d at 641(emphasis in original) (internal quotation removed). At the time Petitioner was sentenced, Ohio courts regularly remanded cases for resentencing regardless of a defendant's failure to preserve a *Blakely/Foster* claim at the time of sentencing.  One Ohio appellate court observed the status of Ohio law during the time that Petitioner's case was sub judice in the Sixth District Court of Appeals:

-15-

**[T]he principles of waiver do not apply to *Foster*.**

**. . . *Foster* and its progeny created an exception to the doctrine of waiver. Many of the cases the Ohio Supreme Court has remanded pursuant to *Foster* involved post- *Blakely* sentencing dates. Yet, the Ohio Supreme Court gave no indication whether *Blakely* issues were raised to the trial court. Instead, it has unlimitedly remanded the cases.** *See State v. Moser*, 5th Dist. No. 05CA39, 2006-Ohio-165 (sentencing took place on April 20, 2005); *State v. Bryant*, 9th Dist. No. 22723, 2006-Ohio-517 (sentencing took place on May 9, 2005), *State v. Kendrick*, 2d Dist No. 20965, 2006-Ohio-311 (sentencing took place on March 9, 2005), *State v. Phipps*, 8th Dist. No. 86133, 2006-Ohio-99 (sentencing took place on March 3, 2005); *State v. Hampton*, 10th Dist. No. 04AP-806, 2005-Ohio-7063 (sentencing took place on July 12, 2004), *State v. Herbert*, 3d Dist No. 16-5-08, 2005-Ohio-6869 (sentencing took place on May 24, 2005); *State v. Wassil*, 11th Dist. No.2004-P-0102, 2005-Ohio-7053 (sentencing took place on October 18, 2004); *State v. Cottrell*, 7th Dist. No. 04CO53, 2005-Ohio-6923 (sentencing took place on September 3, 2004). This is just a small representative sample of cases from eight different appellate courts which affirmed sentences in which the defendant was sentenced post- *Blakely*, and in which the Ohio Supreme Court later reversed the sentences and remanded for resentencing under Foster.

**The above cited cases contain no clear indication that *Blakely* issues were preserved for review. Yet, a review of the cases seems to indicate that they were not.** In both the *Phipps* (Eighth Appellate District) and *Kendrick* (Second Appellate District) cases, it does not appear that *Blakely* issues were raised to the appellate courts. In neither of those decisions is *Blakely* even mentioned. **Thus, it appears as if *Blakely* was raised for the first time to the Ohio Supreme Court and yet the Court still reversed and remanded that case for resentencing pursuant to *Foster*.**

**If that were not enough for this court to conclude that the doctrine of waiver is inapplicable to *Foster* issues, in *Cottrell*, *Blakely* issues were not raised to the trial court. Yet, the Ohio Supreme Court still reversed and remanded the case for resentencing pursuant to *Foster*.** Thus, the Supreme Court's reversal and remanding of *Cottrell* for resentencing based on Foster is a clear indication that Foster is a special case in which the doctrine of waiver is inapplicable.

Accordingly, considering all the above, we agree with the Sixth Appellate District and hold that the doctrine of waiver is inapplicable to Foster issues.

*State of Ohio v. Buchanan*, No. 05 MA 60, 2006 WL 3059911, *6-*8 (Ohio App. 7 Dist. Oct. 26, 2006), unreported (emphasis added).  In Petitioner's case, the appellate court relied upon *State v. Payne*, to determine that Petitioner had forfeited his *Blakely* claim.  The Supreme Court of Ohio stated in *Payne* that:

**{¶ 9} In *Foster* and similar appellate cases, we remanded a *large number of cases already in the appellate phase for resentencing hearings *without any mention of forfeiture*.** *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 3-7. The

remand orders were silent as to the issue currently confronting us.

{¶ 10} **We recognize that this court remanded for resentencing some cases in which the initial sentencing by the trial court had occurred after *Blakely* was decided, but where the defendant had seemingly failed to object on *Blakely* grounds to the sentence imposed.** See, e.g., *State v. Kendrick*, 2d Dist. No. 20965, 2006-Ohio-311, 2006 WL 202141, judgment reversed by *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 411, 2006-Ohio-2394, 848 N.E.2d 809, ¶ 19. However, this court did not then definitively resolve the issue presented by this case; thus, it is appropriate to do so now.

{¶ 11} **Both *Payne* and the majority of Ohio's appellate districts have construed our silence as to remands as settling this issue.** In doing so, they have overlooked our holding that "[a] reported decision, although a case where the question might have been raised, is entitled to no consideration whatever as settling * * * a question not passed upon or raised at the time of the adjudication." *State ex rel. Gordon v. Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E.2d 206, paragraph one of the syllabus.

{¶ 12} Thus, we are not bound by any perceived implications that may have been inferred from *Foster*. *Cf. Lopez v. Monterey Cty.* (1999), 525 U.S. 266, 281, 119 S.Ct. 693, 142 L.Ed.2d 728; see, also, *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 46.

*Payne*, 873 N.E.2d at 308-09 (internal footnote omitted). Although the *Payne* court determined as a matter of Ohio law that the Supreme Court of Ohio was not bound by earlier acts of remanding cases with disregard to a defendant's failure to raise a *Blakely/Foster* object at sentencing, *Payne* does not prevent this Court from finding that Ohio courts have inconsistently applied their procedural bar. In fact, the *Payne* court acknowledged that prior to 2007, the Supreme Court of Ohio and appellate courts remanded cases for resentencing in instances where a defendant had not raised a *Blakely/Foster* objection at sentencing. *See id.* (emphasized portion). As noted above, the Court must look to the state court's application of its procedural bar at the time Petitioner sought relief in the state court. *See Fautenberry*, 515 F.3d at 641. Therefore, when he attempted to raise a *Blakely* claim by filing an appellate brief citing the issue in 2007, Ohio's procedural bar was not consistently and evenhandedly applied to *Blakely/Foster* claims. This fact is evidenced by *Buchanan*'s collection of cases and *Payne*'s own acknowledgment that: (i) the Supreme Court of Ohio remanded cases without commenting on a defendant's failure to raise a *Blakely* claim at sentencing; and (ii) appellate courts construed that silence as "settling the issue."

-17-

The undersigned takes note of three additional issues.  First, the undersigned notes that no meaningful distinction exists between a "*Blakely* claim" and a "*Foster* claim" for procedural default purposes.  A *Foster* claim is essentially the vehicle by which defendants have routinely raised *Blakely* in Ohio courts.  Petitioner's failure to raise a "*Blakely* claim" at the time of sentencing is inconsequential for procedural default purposes, where "[m]any of the cases the Ohio Supreme Court has remanded pursuant to Foster involved post- *Blakely* sentencing dates. Yet, the Ohio Supreme Court gave no indication whether *Blakely* issues were raised to the trial court. Instead, it has unlimitedly remanded the cases. "  *See Buchanan*, 2006 WL 3059911 at *6.

Second, even though Petitioner was sentenced after *Blakely* was announced, he was entitled to raise a *Foster* claim in the state courts because his case was pending on direct review when *Foster* was decided.  *See Foster*, 845 N.E.2d at 499 ("These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.").  The Supreme Court of Ohio decided *Foster* on February 27, 2006, but the Ohio Court of Appeals for the Sixth District did not journalize its opinion in Petitioner's case until February 29, 2008.  ECF Dkt. #11, Ex. 10.  Therefore, his direct appeal remained open well after *Foster*'s announcement and no retroactivity issues exist in this case.

Third, while the *Buchanan* court noted that "[T]he principles of waiver do not apply to *Foster*," the *Payne* court stated that critical differences existed between waiver and forfeiture.  *Payne*, 873 N.E.2d at 310-11.  However, it is largely immaterial what label Ohio courts placed on the applicable procedural bar.  The material consideration is whether Ohio courts regularly barred defendants from raising *Foster* claims based upon a failure to preserve a *Blakely* violation at the time of sentencing.  The *Payne* court's analysis does not change the *Buchanan* court's observation that other Ohio courts regularly remanded cases during 2006 with disregard to the defendant's preservation of *Blakely* claims.

In sum, Petitioner's appeal was sub judice during a time when procedural bars related to *Blakely* claims were not regularly enforced – the time between the Supreme Court of Ohio's decision

-18-

in *Foster* and its decision in *Payne*. *See Buchanan*, 2006 WL 3059911 at *6-*8; *Payne*, 873 N.E.2d at 308-09. Given the Ohio courts' inconsistent application of its procedural bar pertaining to *Blakely/Foster* claims, at least through January of 2007, the procedural bar cannot be considered adequate and independent for federal habeas purposes. Therefore, it cannot function to bar the instant claim. The undersigned therefore recommends that the Court proceed to address the merits of Petitioner's *Blakely* claim.

### iii.      Merits analysis

The Court should address Petitioner's principle *Blakely* claim before addressing consecutive sentencing issues or retroactivity issues. It is clear that Petitioner was sentenced under pre-*Foster* statutes that are unquestionably violative of *Blakely*. *See Cooper v. Hudson*, Case No. 3:07 CV 610, 2008 WL 2001282,*9 (N.D.Ohio May 5, 2008) ("Indeed, under the Ohio sentencing scheme in place when Cooper was sentenced, the state trial court was *required* to engage in judicial fact-finding before enhancing a sentence above the statutory presumed minimum.") (emphasis original). In this case, the trial court violated *Blakely* by applying O.R.C. §2929.1(C) in order to enhance Petitioner's sentence. *See Foster*, 845 N.E.2d at 495 (in interpreting Ohio law, the Supreme Court of Ohio acknowledged that O.R.C. §2929.14(C) required judicial factfinding before the imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant). The undersigned notes that in this particular case, the trial judge made judicially mandated findings of fact that had not been admitted by Petitioner when he determined that Petitioner had committed the worst form of the offense. ECF Dkt. #11. Accordingly, Petitioner should be resentenced by the Lucas County Court of Common Pleas in a manner consistent with *Blakely's* dictates.

Should the Court remand Petitioner's case for resentencing, the Court must address the secondary issue of consecutive sentences. The undersigned notes that recent Sixth Circuit caselaw clearly indicates that Petitioner suffered no *Blakely* violation as a result of receiving consecutive sentences based upon mandated judicial fact finding. In *Wilson v. Brunsman*, the Sixth Circuit noted that:

> At the time of the state court decision in this case, the principle that the Sixth Amendment requires jury determination of all facts necessary for the imposition of concurrent sentences was not clearly established in federal law. To the contrary, as the Supreme Court has since held in *Oregon v. Ice*, 129 S.Ct. 711 (2009), the Sixth Amendment does not require juries to perform this function because a consecutive-sentencing decision is "a sentencing function in which the jury traditionally played no part[.]" Id. at 714. **Thus, the trial court's sentencing of Wilson pursuant to Ohio Rev.Code § 2929.14(E)(4) was not contrary to, nor an unreasonable application of, clearly established federal law.**

*Wilson*, Case No. 08-3795, 2010 WL 273731 at *4, (6th Cir.Jan. 26, 2010), slip op. Recently, the United States Supreme Court decided *Oregon v. Ice*, 129 S.Ct. 711 ( 2009), and held that "In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*." *Ice*, 129 at 717. Applying this precedent Judge Nugent has held that imposing consecutive sentences for discrete crimes does not violate the Due Process Clause of the federal constitution. *Ross*, No. 5:08CV2889 (ECF Dkt. #10, R&R at 39-42, *adopted*, ECF Dkt. #12); *Kravochuck*, No. 1:09CV199 (ECF Dkt. #9, R&R at 17-19, *adopted*, ECF Dkt. #11). Here, Petitioner committed discrete acts,[1] which pursuant to *Ice*, are punishable by consecutive sentences.

Nevertheless, the underlying terms of ten years for each Count of the indictment were premised upon an unconstitutional application of O.R.C. §2929.14(C). Therefore, the sentences underlying the consecutive sentences violated *Blakely*. While the trial judge's finding that consecutive sentences were necessary to punish Petitioner and to protect the public did not itself violate *Blakely*, the finding was premised upon other unconstitutional factual findings. Therefore, the entire judgment entry should be vacated to ensure that Petitioner ultimately receives a sentence that comports with *Blakely*.

---

[1] Although Petitioner's acts of rape occurred during the same attack, the undersigned directs the Court's attention to *State v. Cruz*, Case No. 78475 2001 WL 1075719 at *2 (Ohio App. 8 Dist. Sept. 13, 2001), unreported, where the court held that Ohio law recognizes multiple penetrations during the same attack as discrete counts of rape because each instance increases the risk of physical injury, venereal disease, and pregnancy.

The final issue is whether the Ohio courts can apply *Foster* retroactively on remand.  As the United States Supreme Court stated in *Cunningham v. California*, 549 U.S. 270, 294, 127 S.Ct. 856 (2007), decision, "[t]he ball ... lies in [Ohio's] court" to apply a *Blakely*-compliant sentencing system on remand.  However, the undersigned notes that Petitioner's arguments related to potential ex post facto violations arising from retroactive application of *Foster* have been repeatedly rejected by district courts in this Circuit.  *See Orwick v. Jackson*, Case No. 3:09CV0232, 2009 WL 4043352 (N.D.Ohio Nov. 20, 2009), unreported; *Ross v. Kelley*, No. 5:08CV2889, ___ F.Supp.2d ___, 2009 WL 3208668 (N.D. Ohio Oct. 5, 2009), slip op.; *Kravochuck v. Shewalter*, No. 1:09CV199, 2009 WL 3208663 (N.D. Ohio Oct. 5, 2009), unreported;  *Woody v. Welch*, No. 3:08CV2534, 2009 WL 1440828 at *10 (N.D. Ohio, May 20, 2009), unreported; *McGhee v. Konteh*, No. 1:07CV1408, 2008 WL 320763 (N.D.Ohio Jan. 25 2008), unreported; *see also Cooper*, Case No. 3:07 CV 610, 2008 WL 2001282, n. 8 (in a situation where a Petitioner had not been re-sentenced under *Foster*, the Northern District of Ohio granted habeas relief and explicitly acknowledged that the Petitioner would be resentenced under post-*Foster* sentencing statutes.  The court noted that the trial court had discretion to impose a range of sentences on remand under the post-*Foster* sentencing scheme.).

Petitioner contends potential violations of both the Ex Post Facto Clause and the Due Process Clause of the federal constitution resulting from the retroactive application of post-*Foster* sentencing statutes to his case on remand.  *See* ECF Dkt. #1.  To the extent Petitioner's claim implicates the Ex Post Facto Clause, it lacks merit because the Supreme Court of Ohio is not a legislature bound by the Ex Post Facto Clause.  The Ex Post Facto Clause is contained in Article I of the federal constitution, which pertains to legislative powers.  And the United States Supreme Court made clear in *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001),  "As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government. . . We have observed, however, that limitations on ex post facto judicial decisionmaking are inherent in the notion of due process."   The Honorable Donald C. Nugent of this Court has likewise held that a petitioner cannot state a claim under the Ex Post Facto

-21-

*Clause* for the Ohio Supreme Court's retroactive application of a judicially modified statute because the Ohio court is not a legislature.  *See Ross v. Kelley*, No. 5:08CV2889, (N.D. Ohio Oct. 5, 2009) (ECF Dkt. #10, Limbert, M.J. R&R at 42-44 "that if a law is improperly made retroactive by a court, a Petitioner's remedy, if he has one, lies in the Due Process Clause, not the Ex Post Facto Clause. . . *Rogers* makes clear that the pertinent question for determining whether a petitioner has a valid Ex Post Facto Clause claim is which branch of government committed the alleged constitutional violation. Here, Petitioner alleges that the judicial branch violated his constitutional rights; therefore his claim under the Ex Post Facto Clause lacks merit. . .The fact that the *Foster* court may have acted akin to the legislature does not make the Supreme Court of Ohio a legislature.  It remains true that 'As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.' " *Rogers*, 532 U.S. at 456.") (ECF Dkt. #12 Nugent, J., Adopting R&R.), unreported; *Kravochuck v. Shewalter*, No. 1:09CV199, (N.D. Ohio Oct. 5, 2009), unreported; *McGhee v. Konteh*, No. 1:07CV1408, 2008 WL 320763 (N.D.Ohio Jan. 25 2008), unreported..  The Honorable Solomon Oliver, Jr. has held the same: "the trial court's use of the sentencing statute re-shaped by *Foster* in sentencing Woody did not violate due process or the Ex Post Facto Clause of the Constitution." *Woody v. Welch*, No. 3:08CV2534, 2009 WL 1440828 at *10 (N.D. Ohio, May 20, 2009), unreported.  Petitioner's argument relies upon *Miller v. Florida*, 482, U.S. 423, (1987) to establish that the Ohio courts' retroactive application of *Foster* is an unforeseeable judicial enlargement of Ohio sentencing statutes. ECF Dkt. #1 at 4 (brief).  Judge Nugent thoroughly addressed this argument in *Kravochuck* and determined that the U.S. Supreme Court's decisions in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), was more applicable because:

> [*Cunningham*] is a more recent case and deals specifically with resentencing following a Blakely violation and modification of Sixth Amendment violative sentencing statutes. On the other hand, Miller dealt with retroactive legislation and a violation of the Ex Post Facto Clause. Further, the *Cunningham* case demonstrates that a court can retroactively permit judges to exercise broad judicial discretion and sentence [within] a full statutory range.

*Kravochuck*, 2009 WL 3208663 at *9.  Judge Nugent's holding in *Kravochuck* is consistent with his

-22-

holding in *Ross* and with Judge Boyko's holding in *Orwick*.  Although neither *Ross* nor *Orwick* required analysis of *Miller*, those cases demonstrate that no Ex Post Facto Clause or Due Process Clause violation occurs upon resentencing under the post-*Foster* sentencing scheme.

To the extent Petitioner claims that the Ohio courts will violate his Due Process rights by retroactively applying the post-*Foster* sentencing statute to his case to impose more than minimum sentences, the undersigned recommends that the Court find that his claim lacks merit.  Judge Boyko, Judge Nugent, and Judge Oliver of this Court have rejected similar claims in other cases, holding that no constitutional violation arose with the retroactive application of the post-*Foster* sentencing statute on remand to a petitioner who was improperly sentenced under the pre-*Foster* statute.  *See Ross*, No. 5:08CV2889 at *29-*31 (noting that the *Cunningham* Court permitted the state court to exercise sentencing discretion on remand in Defendant Cunningham's case under the authority of *Booker*; therefore, the retroactive application of *Foster* to Defendant Ross was also consistent with *Booker*); *Kravochuck*, No. 1:09CV199 at *10; *Woody*, 2009 WL 1440828 at *10 ("A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to ex post facto laws. Those challenges have been universally rejected. . . Woody makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.") (internal citations omitted).

Based on the foregoing analysis, the undersigned recommends that the Court grant a conditional writ on ground one and remand the instant case for resentencing.

**B.     GROUND TWO**

Given the foregoing recommendation, Petitioner's claim of ineffective assistance of appellate counsel for allegedly failing to raise a *Blakely/Foster* claim is moot.  Regardless, as Respondent notes, Petitioner did not raise that claim in the state courts and the claim is now time-barred.  *See* ECF Dkt. #11, Ex. 14.  The Court must apply the *Maupin* test.  First, the Court must consider whether Petitioner failed to comply with a procedural rule.  Here, he failed to raise the claim underlying Ground Two in a 26(B) application within 90 days, as the rule requires.  Further, he did

not raise the claim in the Supreme Court of Ohio.  *See  State v. Dieterle*, Case No. C070796, 2010 WL 302 at ¶ 47 (Ohio App. 1st Dist. Apr. 24, 2009) ("claims of ineffective assistance of appellate counsel may be raised in an application for reopening under App.R. 26(B) or in a direct appeal to the supreme court.")slip op.  Next, the Court must consider if the Ohio courts actually enforced the rule. Since Petitioner never raised the claim in the Ohio courts and he was required to do so, this Court can presume that the Ohio courts would have enforced their procedural bar.  *See Wilson v. Webb*, 107 Fed.Appx. 516, 2004 WL 1870456 at **2 (6th Cir. Aug. 13, 2004), unreported.

Third, the Court must consider if Rule 26(B) provides an adequate and independent bar to federal review.  Respondent directs the Court to *Fautenberry*, among other cases, for the premise that Ohio Courts regularly enforce Rule 26(B).  ECF Dkt. #11 at 11.  However, the Sixth Circuit has clearly held that *Fautenberry* is inapplicable insofar as it considered the consistency of Ohio courts' application of Rule 26(B) because *Fautenberry* is a capital case.  *See Parker v. Bagley,* 543 F.3d 859, 861-62 (6th Cir. 2008); *see also Abshear v. Moore*, 2009 WL 4408189 at *5 (6th Cir. Dec. 3, 2009), slip op.  Regardless, the Sixth Circuit held in *Parker* that 26(B) continued to be an adequate and independent remedy in non-capital cases at least until July, 2002, when the petitioner in *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir.2007) filed his 26(B) application.  Respondent has not directed the Court to any cases holding that Rule 26(B) was an adequate and independent bar during the time that Petitioner should have filed a Rule 26(B) application.  *See Parker*, 543 F.3d at 862 (considering the date on which the 26(B) application was filed).  The undersigned is not aware of any Sixth Circuit precedent extending the holdings of *Parker* and *Scuba* beyond July of 2002.  The undersigned again notes that evenhanded application of a procedural bar is a temporal consideration:

> the firmly established and regularly followed inquiry cannot be made once and for all. Instead we must consider whether the adequate and independent state procedural bar ... [was] firmly established and regularly followed by the time as of which it [was] to be applied.

*Fautenberry*, 515 F.3d (6th Cir. 2008).

On the undersigned's own review of Ohio law it appears that the Ohio Court of Appeals has regularly enforced the procedural bar in Rule 26(B) near the time Petitioner filed his application on

June 18, 2008. *See, e.g.*, *State v. Douglas*, NO. 85525, 85526, 2008 WL 2536061 (Ohio App. 8 Dist.,June 24, 2008), slip op.; *State v. Woodey*, NO. 90317, 2008 WL 2369620, (Ohio App. 8 Dist. June 09, 2008), slip op.; *State v. Arcuri,* NO. 84435, 2008 WL 660545 (Ohio App. 8 Dist. Mar. 12, 2008), slip op.; *State v. Davis*, NO. 05 MA 3, 2007 WL 4696830, (Ohio App. 7 Dist. Dec. 27, 2007), unreported. Accordingly, the undersigned recommends that the Court find that Ohio's procedural time-bar contained in Rule 26(B) was an adequate and independent bar foreclosing federal review during the time Petitioner should have filed his Rule 26(B) application.

Lastly, the Court must consider cause and prejudice. Petitioner does not allege cause for his failure to raise an ineffective assistance of counsel claim pertaining to his underlying *Blakely/Foster* claim. As stated above, if a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

### C.     GROUNDS THREE, FOUR, AND FIVE

Respondent contends that Grounds Three, Four, and Five are procedurally defaulted. ECF Dkt. #11 at 10-13. Respondent contends that Petitioner failed to file an application to reopen his appeal within 90 days as required by Ohio Appellate Rules 26(B)(1) and 26(B)(2)(b). *Id.* at 11. The Court should apply the *Maupin* test to determine if Petitioner's claims are defaulted. Under the first prong of *Maupin*, the Court must consider whether Petitioner has failed to comply with a procedural rule. As Respondent noted, Ohio Rule of Appellate Procedure 26(B) requires applications for reopening of appeals to be filed within 90 days of the journalization of the appellate judgment, absent a showing of good cause. Ohio App. R. 26(B). Here, the Ohio Court of Appeals for the Sixth District journalized its decision on February 29, 2008 (ECF Dkt. #11, Ex. 10), but Petitioner did not file his application for reopening his appeal until 109 days later, on June 18, 2008 (ECF Dkt. #11, Ex. 14).

Turning to the second prong of *Maupin*, the Court must consider whether the state courts enforced the procedural bar. The Ohio Court of Appeals denied Petitioner's application to reopen his appeal as untimely. ECF Dkt. #11, Ex. 15. Of note, the court appears to have mistakenly concluded that Petitioner did not appeal the Sixth District Appellate Court's judgment to the

Supreme Court of Ohio. *Id*. at ¶1; *but see* ECF Dkt. #11, Ex. 11 and 12.  Regardless, Petitioner could have pursued his 26(B) motion in the appellate court pursuant to S.Ct.Prac.R. II 2.2(D)(1), and he was obligated to do so within 90 days.  *See State v. Hornack*, No. 81021, 2005 WL 2882928 at ¶5 (Ohio App. 8 Dist. Oct. 28, 2005) ("Indeed, diligent pursuit of other remedies should toll the time for filing an application to reopen. However, what this argument actually establishes is that Hornack made an election of remedies, and in doing so, he precluded his pursuing an application to reopen.").

Under the third prong of *Maupin*, the Court must consider whether the time-bar included in Rule 26(B) is an adequate and independent state ground upon which the state can foreclose federal review.  For the reasons stated in section V(B), above, the undersigned recommends that the Court find that Rule 26(B)'s time-bar was an adequate and independent procedural bar foreclosing federal review as of June 18, 2008, the date on which Petitioner filed his Rule 26(B) application.

Lastly, the Court must consider cause and prejudice under *Maupin*.  In arguing cause and prejudice, Petitioner primarily argues the merits of his underlying ineffective assistance of counsel claims.  *See* ECF Dkt. #13 at 10-14.  However, Petitioner's argument regarding the merits of his ineffective assistance of counsel claims does not establish cause for his failure to comply with Rule 26(B)'s filing requirements.  Further, the appellate court found that Petitioner did not have good cause for failing to comply with Rule 26(B)'s filing deadline in light of his claims that he had limited access to counsel and legal resources due to the fact of confinement.  ECF Dkt. #15 at ¶¶3-4.  Likewise, these claims do not establish cause for federal habeas procedural default purposes.  *See Lopez v. Wilson*, 426, F.3d 339, 352 (6th Cir. 2005); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004); *see also Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir.2000) ("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.").

Given the foregoing, the undersigned recommends that the Court find that Grounds Three, Four, and Five are procedurally defaulted.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT a

CONDITIONAL WRIT on Ground One, REMAND the instant case for RESENTENCING, and DISMISS Grounds Two, Three, Four, and Five WITH PREJUDICE.


DATE: February 5, 2010                    *s/ George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).